# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **JEFFERY LEE GUILLORY** | **CIVIL ACTION NO. 09-0244** |
| **VS.** | **SECTION P** |
| **SHERIFF MICHAEL W. NEUSTROM** | **JUDGE MELANÇON** |
| | **MAGISTRATE JUDGE METHVIN** |

### *REPORT AND RECOMMENDATION*

*Pro se* plaintiff Jeffery Lee Guillory, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 11, 2009. Plaintiff is an inmate or detainee at the Lafayette Parish Corrections Center (LPCC), Lafayette, Louisiana, and he complains that he was wrongfully convicted of prison disciplinary violations and that excessive sanctions were imposed. Plaintiff sued Lafayette Parish Sheriff Michael Neustrom and LPCC Corrections Officers Paula Fuselier, Joseph Taylor, Matthew Meginley and Hans Ward. He seeks damages of $28,000 and injunctive relief – the establishment of "... a more adequate investigation during disciplinary proceeding..." and the prohibition of "excessive" sanctions. Plaintiff has also requested appointment of counsel. [rec. doc. 2] This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief might be granted. As shown more fully below, it is further ordered that plaintiff's request for appointment of counsel [rec. doc. 2] be **DENIED.**

## *Statement of the Case*

Plaintiff has been incarcerated at the LPCC since his arrest on March 27, 2008.

On April 28, 2008 Dy. Matthew Maginly charged plaintiff with the violation of a Class 1 disciplinary offense, Rule 6 – destruction, alteration, damaging, and/or tampering with property (this charge was based on allegations that the door lock to plaintiff's cell had been stuffed with paper or some foreign object to keep it from locking.); and a violation of a Class 2 disciplinary offense, Rule 17 – being in an unauthorized area (Dy. Meginly discovered that plaintiff had switched assigned cells with another prisoner prior to lock-down) . [rec. doc. 1-3, p. 2; in the Disciplinary Report, Dy. Meginly characterized the Rule 6 violation as "popping" the cell door.]

On May 6, 2008 a disciplinary hearing was convened by Dy. Paula Fuselier. According to plaintiff, Dy. Fuselier rejected plaintiff's efforts to present a defense and sentenced plaintiff to 25 days disciplinary detention; imposition of the sentence was suspended and plaintiff was placed on probation for 25 days beginning May 6. The disciplinary report submitted by plaintiff indicates that plaintiff pled guilty to the offense. [rec. doc. 1-3, p. 3] Plaintiff claimed he signed the disciplinary report based on Fuselier's assurance that the sentence would be suspended.

On May 8, 2008 at 6:15 a.m. plaintiff was again cited for violating Rule 6 by Dy. Hans Ward. [rec. doc. 1-3, p. 4] Plaintiff was served with a copy of the Disciplinary Report by Dy. Batiste at ll:00 a.m. but plaintiff refused to sign the report and protested to Dy. Batiste that he had just received a probationary sentence for the same offense.

A disciplinary hearing was convened before Dy. Taylor. Plaintiff pled not guilty and argued that the charge amounted to double jeopardy because he was on probation for the same offense. Plaintiff advised Taylor to contact the jail's maintenance department because he

believed their maintenance records would establish that the door lock had not been cleared since the previous infraction in April. (According to plaintiff, he was confined in 4-C Cell #9 since April 8, 2008 and he knew of no cell lock clearance conducted until May 8.) Taylor indicated that he would investigate the situation and, when several days elapsed, plaintiff assumed that he had been cleared of the offense.

On May 14, 2008 plaintiff was ordered to commence serving 25 days in disciplinary confinement. During this detention – which lasted only 23 days – he was confined to the disciplinary cell for 23 hours a day, his regular meals were replaced with diet "loaf," and he was allowed no visitation, recreation, or television. Further, he was not allowed to participate in educational or job programs, religious services, or the honor dormitory program. He also was denied the use of his bed mattress for 12 hours/day (from 6:00 a.m to 6:00 p.m.).

### *Law and Analysis*

### *1. Screening*

When a prisoner, such as plaintiff, seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court should be able to dismiss as frivolous a

significant number of prisoner suits on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint, the memorandum in support, and the accompanying exhibits detail both the broad contours and the specifics of his claim for relief. He has pleaded his best case and need not be afforded further opportunities to amend.

## 2. Due Process

For the purposes of this Report, it is assumed that plaintiff was a pre-trial detainee when the complained of events occurred.[1] Thus, his claims must be evaluated under the Fourteenth Amendment's Due Process Clause which prohibits the punishment of detainees prior to an adjudication of guilt.. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

---

[1] Indeed, in the event that he was a convicted prisoner, his claim would be subject to dismissal pursuant to *Sandin v. Conner*, 515 U.S. 472, 484 (1995), since the punishment imposed as a result of his disciplinary convictions did not amount to an "... atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Since a person in pretrial detention has, by definition, not yet been convicted of a crime they may not be punished for the crime; nevertheless, detainees may be subject to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.*

Pretrial detainees are not immune from prison disciplinary actions. See *Frank v. Larpenter*, 234 F.3d 706 (5th Cir. 2000) (Table), 2000 WL 1598076, citing, *Rapier v. Harris*, 172 F.3d 999, 1003 (7th Cir.1999) (holding that prison officials could place a pretrial detainee in disciplinary segregation); *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir.1996) (same); *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir.1995)(same). Thus, prison officials may impose punishment to enforce reasonable disciplinary requirements <u>so long as the punishment is not for prior unproven conduct</u>. See *Collazo-Leon*, 51 F.3d at 318. Plaintiff's commitment to disciplinary confinement was clearly punitive, however, the punishment was meted out for prison disciplinary rules violations allegedly committed during his detention and not as punishment for the crime he was alleged to have committed.

The duty imposed on the defendants for maintaining security and order at the LPCC is identical with respect to both detainees and convicts in their custody. Plaintiff was therefore entitled to the same due process protections as convicted prisoners at a disciplinary hearing. Thus, in order to prevail, plaintiff must assert and ultimately establish that the defendants who were responsible for his commitment to disciplinary detention presented "such a hazard of arbitrary decision-making that it should be held violative of due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 571, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Plaintiff's pleadings and exhibits fall short of that standard. To the contrary, plaintiff was afforded hearings and an opportunity to contest the alleged violations. His adjudication and punishment suggest that the deprivation of liberty complained of was based on admitted bad behavior and was not based on the "wanton acts of prison staff." Compare *Frank v. Larpenter*, 2000 WL 1598076 at *2. In short, plaintiff was afforded all of the process that he was due[2] and his protestations to the contrary are insufficient to state a claim for which relief may be granted.

Plaintiff's complaint of excessiveness of sentence fares no better. He has not shown that the punishment meted out for his offenses exceeded the maximum period of detention authorized by prison regulations.

### 3. Appointment of Counsel

Plaintiff has also requested the appointment of counsel. [rec. doc. 2] Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are

---

[2] The findings of the prison disciplinary hearing may not be disturbed unless they are determined to have been arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir.1995). Nor may federal *habeas* courts review the sufficiency of the evidence since a finding of guilt in a prison disciplinary hearing requires only the support of some facts, or any evidence at all. *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir.1986); *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.1981), *cert. denied*, 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). In other words, "[P]rison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of the prison officials." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir.1994). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board...." *Superintendent, Massachusetts Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)(emphasis supplied). The record demonstrates sufficient support for the findings of guilt. The evidence submitted establishes that plaintiff admitted to the original violations – plaintiff was discovered in an unauthorized area and his presence in that area could only have been accomplished by manipulating or "popping" the cell door locking mechanism. Plaintiff has not shown the violation of a constitutional right. See *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir.1995).

given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint setting forth his cause of action against the named defendants. No special legal knowledge is required of plaintiff herein. The claim is not necessarily atypical of those often asserted in civil rights litigation and is not complex.

Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf. Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

### 4. Conclusion, Recommendation, and Order

Based on the foregoing,

**IT IS ORDERED** that plaintiff's Motion for the Appointment of Counsel [rec. doc. 2] is **DENIED**; and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days**

following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b),

shall bar an aggrieved party from attacking either the factual findings or the legal

conclusions accepted by the District Court, except upon grounds of plain error. See

*Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on July 8, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)